MUNICIPALITY OF CIALES, Plaintiff and Appellee, v. VALENTÍN POLANCO DE JESÚS, Defendant and Appellant. SAME v. SAME.

Nos. 8917 and 8925. Argued June 21, 1944.—Decided July 3, 1944.

*Angel Rivera Colón* for appellee-appellant. *Valentín Polanco de Jesús, pro se,* for appellant-appellee.

Mr. Justice De Jesús delivered the opinion of the court.

The Municipality of Ciales filed this suit for payment of sewage system service and water service supplied to two residences and an ice factory which the defendant owns in said town.[1]

In the first cause of action the following sums were claimed for the sewage system service supplied:

House, Betances Street. From July 1, 1936, to June 30, 1942, that is, 72 months,_____ $72.00

House, Obreros Street. From January 1, 1933, to June 30, 1939; from July 1, 1940, to July 30, 1941, and from October 1, 1941, to June 30, 1942, in total, 99 months,____ 99.00

House, extension of Palmer Street. From July 1, 1933, to November 30, 1940 and from July 1, 1941, to March 30, 1942, in total, 98 months,_____ $98.00

Total sum owed for sewage system service_____ $269.00

[1] By virtue of Ordinance No. 8 "To Regulate the Use of the Sewage System and of the Aqueduct of the Municipality of Ciales, Puerto Rico, and for other purposes," approved September 12, 1931, as amended by Ordinance No. 1 of the Municipality referred to, approved July 28, 1932, every landowner or real estate administrator shall pay one dollar every month for each outlet for the use of the sewage system. As to the aqueduct water service, the same Ordinance provides:

"Section 16.—Subscribers shall be charged for the water service in accordance to the width of the pipe system used, in the following form:

"Up to ½ inch, $7.20 a year, which is $1.80 a trimester, for each inlet;

" * * * * * * *

"Width of 1 inch, $28.00 per year, which is $7.20 a trimester, for each inlet.

". . . Big industries such as . . . ice factories . . . shall pay three times the tariff herein established."

In the second cause of action the following sums were claimed for water service:

House, Betances Street. From July 1, 1935, to June 30, 1942, that is, 84 months, at the rate of sixty cents a month, 50. 40

House, Obreros Street. From April 1, 1932, to June 30, 1939; from July 1, 1940 to July 1, 1941, and from October 1, 1941, to June 30, 1942, in total, 108 months, at the rate of sixty cents a month,_____ 64. 80

House, Extension of Palmer Street. From July 1, 1932, to November 30, 1940, and from July 1, 1941 to March 31, 1942, in total, 110 months, at the rate of $7.20 a month,[2]_____ $792. 00

 Paid on account_____ 39. 60
 ——— 752. 40

 Total sum claimed for water service_____ $867. 60

The lower court entered judgment in plaintiff's favor for $848.60, with legal interest and costs, instead of $1,136.60, as claimed in the two causes of action. Against that judgment both parties have taken appeals, which have been perfected separately and filed in this court, defendant's as number 8917, and plaintiff's as number 8925.

██ In appeal number 8925 taken by the plaintiff, defendant filed a motion to dismiss based on the fact that he was not notified with the judgment roll.

We have compared the judgment roll in one and the other appeal, and we must conclude that no damage could have been caused the defendant because he did not get a copy of the judgment roll which formed part of the appeal taken by the plaintiff. The judgment rolls in both cases are virtually the same. In the appeal taken by the plaintiff an "Order Deciding Bill of Particulars" is not included, which is in turn included by the defendant in his appeal, but that omission is of no importance, since the defendant himself,

---

[2] This building is used as an ice factory and its pipe system has a width of one inch, for which reason the tariff is three times that of a residence having a pipe system of identical width.

though including it in the judgment roll, does not raise in his appeal any matter relating to it. Another difference which exists between the two appeals is that the notice of judgment is included in the judgment rolls in defendant's appeal, while it is omitted in plaintiff's appeal. And finally, the judgment roll in defendant's appeal is certified by the attorneys, while the judgment roll in plaintiff's appeal is certified by the clerk of the lower court. There is not one document included in the judgment roll appearing in plaintiff's appeal which does not form part of the judgment roll in defendant's appeal. The appeal taken by the Municipality having, as we shall show, merit, and no damage having been caused to defendant because of the lack of notice of the judgment roll, the motion to dismiss must be denied. See §142, Code of Civil Procedure.

Defendant contends that the lower court erred (1) in dismissing the defense of prescription alleged by him; (2) in the admission and appraisal of the evidence; and (3) in ordering him to pay for water supplied to the tenants of the house on Obreros Street.

Plaintiff in turn attacks the judgment because (1) it ordered the defendant to pay for water supplied to the ice factory during the period from July 1, 1932, to June 30, 1937, at the rate of $2.40 a month, instead of $7.20 as the Municipal Ordinance establishes; and (2) it did not order the defendant to pay attorney's fees.

We shall consider both appeals jointly in this opinion.

Defendant, after referring to a certain agreement he made with the Mayor, and which we shall discuss hereinafter, in summarizing his own testimony, says at page 39 of his brief:

"The sum of $1.20 a month was paid up to the year 1936 in which the witness acquired certain credits against the municipality. The witness then told the mayor that in view of the fact that he had certain substantial credits against the municipality, which was not

making any payments, the account would remain pending until the municipality should pay him, so that the witness would then pay the mayor, and thus the situation remained until in 1941, when the new administration came in."

Plaintiff having accepted the proposition of the defendant, and it not appearing that the municipality has paid its debt, by virtue of his own agreement the defendant is estopped from alleging the defense of prescription against the plaintiff, who on having accepted his proposition did not collect the debt on time.

The lower court acted therefore according to law in dismissing the defense of prescription.

■ Discussing the defense alleged by the defendant relating to the impossibility of using the water supplied by the municipality in the operation of the ice factory, the lower court said in its opinion:

"Now, we are convinced from the evidence that up to the year 1937, the Municipality of Ciales had very slight pressure in its aqueduct, to such an extreme, that the defendant could only use the water to clean the factory, and he had to buy special machinery to freeze the water as well as install special deposits to store the water in order to feed the condenser during working hours, since the water from the aqueduct did not have enough pressure to move the ice plant, as the expert specifically testified at the hearing.

"Andrés Robles, the former Mayor, testified that in 1937 a new aqueduct was built at the dam of the small river 'Sonadora,' and that from that time on there was enough pressure, but that previously the pressure was very slight.

"The sum of $7.20 a month is the one set by the tariff when a pipe system with a width of one inch is used in buildings dedicated to industries, while the other houses, for the same service, are to pay the sum of $2.40 a month.

"If from July 1, 1932, to 1937, the defendant could not use an efficient water service to operate his ice factory because of the lack of pressure, it would be unjust to charge him the triple tariff of $7.20. Since he used a certain amount of water, as he admitted, to clean

the factory, the correct tariff should be $2.40 a month, until 1937, when there was enough pressure, as Andrés Robles, the former Mayor, admitted, brought as a witness by the defendant himself.

"Since in the complaint 110 months were claimed at the rate of $7.20 a month for aqueduct service to the building where the defendant's ice factory was installed, for the reasons already stated a deduction must be made in the following form: We understand that defendant should be charged for the period of five years, that is, from July 1932, to June 1937, for aqueduct service to the factory building, which period includes sixty months, at the rate of $2.40 a month, and then, from July 1st, 1937, until March 31, 1942, that is, 50 months, at the rate of $7.20. This amounts to a total of $504.00, instead of $792.00 as claimed in the complaint, for aqueduct service to the above mentioned factory building."

The municipal ordinance establishes—and it is so admitted by the lower court—the price of $7.20 a month for water supplied to the ice plant, using, as it does a pipe one inch wide. It is true that the defendant introduced evidence to the effect that, on beginning the water service to the ice factory, the mayor, taking into consideration the deficiencies alleged by the defendant and referred to by the judge in those paragraphs of his opinion we have just copied, agreed with the defendant that instead of $7.20 a month he was only to pay $1.20 a month. But we can not lose sight of the fact that the mayor lacked the power to alter the price of the water established in the municipal ordinance on his own account and without a previous resolution of the Municipal Assembly to that effect. If the water supply was insufficient, the defendant could ask the Municipal Assembly to pass a resolution considering said circumstance, either lowering the tariff or discontinuing the service, but we can not see upon what authority the judge of the lower court change the tariff set forth in the ordinance.

For the reasons stated, the agreement between the defendant and the Mayor must be considered as nonexistent for all legal purposes.

■ It is also true that when the new administration of the Municipality of Ciales entered office, it found in the municipality's books that the defendant was only charged the sum of $1.20 for water service to the ice factory, and the new Treasurer, upon discovering that said amount was not the one to be charged according to the ordinance, made the corresponding changes in the book, thereupon charging the water supplied to the defendant during that period of time elapsed since the beginning of the service at the rate specified in the municipal ordinance. Such action on the part of the Municipal Treasurer was not illegal, as the defendant contends. On the contrary, it was in accordance with the provisions of the ordinance.

■ The defendant complains that the court ordered him to pay for the water consumed by the tenants of the house on Obreros Street. As to this point the lower court said:

"We have not been convinced by defendant's allegation to the effect that the tenants of this house were responsible for the water service. Although it is true that the Supreme Court has decided that a debt for water service or sewage system service is not a lien on the property and that in the sale of a house the purchaser is not responsible for what the seller owes, the issue in this matter is different. The account was opened in defendant's name in the books of the municipality. And he notified the municipality, in writing, of the dates on which the tenants moved, in order that the time during which the house was not receiving the service should not be included in his account. The general usage is that it is the owner of the house who pays for the water service, though we admit that if the municipality is dealing directly with the tenants, it can not recover from the owner afterwards. Such a situation was not proved."

As shown by the evidence, the defendant himself wrote the municipality notifying it that the house was vacant, and in his testimony (Transcript of the Evidence, p. 101) he expressly admitted that on several occasions the tenants left him certain amounts of money to be paid for the water serv-

ice. If in truth the defendant did not have to pay for it, we can not see why the tenants had to give him the remainder of what they owed, nor why should the defendant accept it to pay the municipality himself.

In our judgment, the conclusion reached by the lower court as to this point is in accordance with law and is sustained by the evidence.

 It only remains to consider whether the lower court erred in not ordering the defendant to pay attorney's fees.

To this effect the lower court said:

"The defendant is not ordered to pay attorney's fees, because the circumstances and the facts involved in this complaint forced the defendant to defend himself and the suit was necessary in order to adjust the debt to a reasonable amount."

As we have seen, the reason given by the judge of the lower court for the exemption of the defendant of the payment of attorney's fees does not exist. No adjustment was necessary with respect to the amounts claimed for the water used by the defendant in his plant. All the entries claimed by the plaintiff have been granted, in our judgment, without any possible doubt as to their source. That being so, the lower court erred in not ordering the defendant to pay a reasonable amount as attorney's fees.

For the reasons stated the judgment appealed from must be modified so as to order the defendant to pay $1,136.60 to the municipality with legal interest, costs, and one hundred dollars for attorney's fees, and as thus modified, it is affirmed.